# Schleich, Appellant, *v.* Baltimore & Ohio Railroad Company.

*Negligence—Railroads—Trespassers—Child playing on tracks.*

In an action against a railroad to recover for the death of a child, it appeared that the defendant company had its railroad tracks laid on a strip of ground belonging to it and running east and west along the south side of an avenue, the grade of which was six or seven feet above that of the railroad. Plaintiffs' son, a boy about nine years old, with a companion crossed the avenue and

descended to defendant's tracks where they found standing on the northernmost track a westbound train consisting of forty-five or fifty coal cars which had become stalled for want of steam. All the crew of the train with the exception of one flagman were on or about the engine or its tender. The flagman had been stationed one block behind of the rear of the train. When steam was gotten up, the engineer gave the signal recalling the flagman. Five minutes elapsed before the latter regained the train. During that time plaintiffs' son succeeded in climbing upon a car which stood fourth or fifth from the rear of the train and got down inside of it where he was completely hidden. Within a minute or two after the boy had boarded the train the flagman reached the rear car and gave the engineer the signal to start. As the flagman signalled the engineer he had looked along first one side of the train and then the other and he had observed none near it who could be hurt by its motion. When the train had moved about five carlengths the flagman observed plaintiffs' son sitting on the north side of the ditch between the railroad tracks and the avenue embankment with his leg cut off. *Held,* that a nonsuit was properly entered.

Argued March 31, 1914. Appeal, No. 95, Jan. T., 1914, by plaintiff, from judgment of C. P. No. 4, Philadelphia Co., March Term, 1912, No. 5878, refusing to take off nonsuit in case of Charles Schleich and Whilomena Schleich v. Baltimore and Ohio Railroad Company. Before FELL, C. J., BROWN, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Trespass for damages for death.

The court entered a nonsuit. Upon a motion to take off the nonsuit AUDENRIED, J., filed the following opinion:

On the afternoon of March 8, 1912, the plaintiffs' son, Raymond, a boy about nine years old, met another boy of his own age at Sixteenth and Porter streets, in this city, and set out with him for the railroad tracks laid on a strip of ground belonging to the defendant and running east and west along the south side of Oregon avenue, their purpose being to steal coal from the coal cars there. The grade of Oregon avenue at this point is six or seven feet above that of the railroad.

The boys crossed that street and descended to the defendant's tracks by a path that runs south from a point opposite the mouth of Bancroft street, a small thoroughfare which leads north and south. They found standing on the northernmost track a west-bound train consisting of forty-five or fifty coal cars. Its rear car was then opposite Sixteeenth street, while its locomotive was about three blocks to the west of that point.

This train had become stalled for want of steam. Its crew consisted of an engineer, a fireman, a brakeman, a conductor and a flagman. When the two boys arrived on the scene all of the crew except the flagman were on or about the engine or its tender. The flagman had been stationed one block to the east of the rear end of the train. The train had lain at this point for twenty minutes, and the engineer having at last succeeded in getting up enough steam to start with, had given the signal recalling the flagman.

Five minutes elapsed before the latter regained the train. During that time Raymond succeeded in climbing upon a car which stood fourth or fifth from the rear end of the train, and got down inside of it. Here he was completely hidden. Nobody could see him without mounting the car and peering over its side or getting up on top of the adjoining cars and looking down. No one saw him board the train except his companion, and the latter seems to be the only person who knew that Raymond was anywhere near it.

Within a minute or two after the boy had boarded it, the flagman reached the rear car and from its platform gave the engineer the signal to start. The train immediately began to move. As the flagman signalled the engineer he had looked along first one side of the train and then the other, but had observed none near it who could be hurt by its motion. A number of boys had been playing on the cars before this, but they had been called away by a woman at the window of a neighboring house

before the train started and they did not approach it
again until it got under way.

The plaintiffs' son was not with those boys. The first
person to see him after he passed from the sight of his
comrade into the coal car was the flagman. When the
train had moved about five car lengths the latter who was
on the back platform of the last car noticed him sitting
on the north side of the ditch between the railroad tracks
and the Oregon avenue embankment. His attention had
been arrested by the child's call, but until the latter
called a second time the man thought that he was playing
and did not observe that he had been hurt. The rear end
of the train was then a car's length to the west of where
the boy was sitting. As soon as he realized that some-
thing was wrong the brakeman jumped from the car and
finding that the child's leg had been cut almost off, car-
ried him up the bank to Oregon avenue. Subsequently
the boy was carried by an ambulance to the hospital.
There he died the next day. How he came to be injured,
nobody knows. Presumably the wheels of the train
passed over his leg; but no one saw this happen.

The plaintiffs' evidence at the trial disclosed the facts
above outlined. The court on motion of the defendant
entered a nonsuit, which we are now asked to take off.

The plaintiffs contend that the jury should have been
allowed to say whether or not the flagman was negligent
in failing to observe the presence of their son on the train
before starting it; and in starting the train without mak-
ing sure that there was nobody on it who wanted to get
off. This proposition is based on the fact that a dozen or
more boys had been playing about the train in plain view
of everybody, and the assumption that it might have been
expected that some of them were still on the cars when
the flagman was called in.

The answer to this argument is that all the boys whom
the flagman saw or might have seen without extraordi-
nary effort had actually left the train before he signalled
the engineer to start it and none of them were injured.

Even if it could fairly be said that with respect to these boys he was guilty of negligence, it does not follow that such negligence made him responsible for the death of the boy who was hurt. To fix responsibility on the flagman for the death of the latter it must be shown that the death resulted from negligence as to him.

As to the Schleich boy, however, there was no negligence on the part of the flagman. He was hidden in one of the cars. There he had no right to be. The car was private property. It was standing on private land. Neither the flagman nor the other men on the train were bound to hunt for concealed trespassers. It was their duty, it is true, not to injure him intentionally or wantonly. Had the flagman seen him in the act of climbing down from the car he would have been negligent if he signalled for the engineer to start the train before the boy reached a place of safety. Even trespassers are entitled to human consideration. But the flagman did not see the boy at all, and he was no more bound to take notice of his presence on the train, because the trespasser happened to be of tender years, than he would have been had the latter been a man. The standard of duty in a case like this is the same whether the person injured is an adult or a child. Thompson v. Railroad Co., 218 Pa. 444.

The correctness of this view was recognized in Walsh v. Pittsburgh Rys. Co., 221 Pa. 463, the case on which counsel for the plaintiffs principally relies. The sending of that case to the jury was held to be warranted only because the evidence showed that the man by whose negligence the plaintiff was injured had the fullest opportunity to see her, to observe where she was and to realize the consequence that would probably result from his act. The presence of this person could not be secured by either party at the trial and the jury was left to inference as to his actual knowledge of the circumstances under which he committed the act that did the injury.

In the case at bar the man whose alleged negligence

is pointed to as the cause of the accident appeared on the witness stand at the call of the plaintiffs and swore that he did not see their son on the train. If that evidence be accepted as true and the plaintiffs who put him on the stand cannot complain if full credit be accorded to their own witness, no room was left for conjecture on this subject.

The court dismissed the motion to take off the nonsuit. Plaintiffs appealed.

*Error assigned* was in refusing to take off the nonsuit.

*Henry B. Hodge,* with him *T. Truxtun Hare* and *Paul Reilly,* for appellants.

*W. B. Linn,* with him *H. B. Gill,* for appellee.

PER CURIAM, April 27, 1914:

Nothing can be added to the clear and concise statement of the facts and the law applicable thereto by Judge AUDENRIED and on his opinion we affirm the judgment appealed from.